# 22-1531-cr

United States Court of Appeals

*for the*

Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

MICHAEL J. TYO,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANT-APPELLANT**

NICHOLAS J. PINTO
LAW OFFICE OF NICHOLAS PINTO
*Attorneys for Defendant-Appellant*
745 Fifth Avenue, Suite 500
New York, New York 10151
(212) 619-5500

# TABLE OF CONTENTS

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    Offense Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    Plea Hearing, PSR and Sentence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..3

    Pre Sentence Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..4

    Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    THE SENTENCE IMPOSED ON TYO BY THE DISTRICT COURT IS
    UNREASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

# TABLE OF AUTHORITIES

**Cases**

Gall v. United States, 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Kimbrough v. United States, 552 U.S. 85 (2007) . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Booker, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Cavera, 550 F.3d 180 (2d Cir. 2008). . . . . . . . . . . . . . . . . .. 9,10

United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . 10,11

United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006) . . . . . . . . . . . . . . . 9,11

United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . 10

United States v. Jesurum, 819 F.3d 667 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . 9

United States v. Loudon, 385 F.3d 795 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . 9

United States v. Rattoballi, 452 F.3d 127 (2d Cir. 2006). . . . . . . . . . . . . . . . . . 10

United States v. Stewart, 590 F.3d 93 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . 9

**Statutes and Other Authority**

18 U.S.C. § 2113(a) …………………………………………………………….1,3

18 U.S.C. §3231………………………………………………………………………1

18 U.S.C. § 3553……………………………………………………………...9,10

28 U.S.C. §1291………………………………………………...........................1

**U.S.S.G. §2B3.1**……………………………………………………………………3,4

**U.S.S.G. §3D1.4**…………………………………………………………………….. 4

**U.S.S.G. §3E1.1** …………………………………………………………………… 4

**U.S.S.G. §5D1.2** …………………………………………………………………… 5

# STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Michael Tyo ("Tyo") was charged with committing offenses against the United States for which the District Court had jurisdiction pursuant to 18 U.S.C. § 3231. He filed a notice of appeal from a final judgment of conviction and sentence that disposed of all claims before the District Court on July 7, 2022; this Court therefore has jurisdiction pursuant to 28 U.S.C. § 1291.

# QUESTION PRESENTED

Whether the defendant's sentence is substantively unreasonable in light of his serious mental health diagnosis and personal circumstances as opposed to the weight the court placed on the seriousness of the offense and need for general deterrence.

# STATEMENT OF THE CASE

Tyo appeals from a judgment of the United States District Court for the Western District of New York (Larimer, J.), entered on July 7, 2022, convicting him, upon his guilty plea, of Bank Robbery in violation of 18 USC § 2113(a) (COUNT ONE and TWO), and Attempted Bank Robbery in violation of 18 USC § 2113(a) (COUNT THREE) and sentencing him to a term of imprisonment of 100 months to be followed by a three-year term of supervised release. In addition, the

court ordered a special assessment of $300 and restitution of $2600.00.[1] Tyo is currently incarcerated pursuant to that sentence.

## STATEMENT OF FACTS

**The Offense Conduct**

Michael Tyo pleaded guilty to robbing two banks and attempting to rob a third bank in August 2019. Specifically, regarding Count One, on August 24, 2019, Mr. Tyo entered Citizens Bank inside the Tops Market at 1900 South Clinton Avenue in Brighton, gave the teller a note, threatened violence, and demanded money. [A29-30], [A12]. In response, the teller handed over $800. Id. For Count Two, on August 27, 2019, the defendant entered Citizens Bank inside the Tops Market at 1460 Park Ave., in Buffalo, and gave the bank teller a note demanding 50 and 100 dollar bills, under threat of violence. [A31], [A12]. In response, the teller handed over $1800. Id. For Count Three, on August 27, 2019, the defendant attempted to rob the KeyBank located at Niagara Boulevard located in Niagara Falls, New York, by giving a teller a note demanding money. [A32], [A13]. On this occasion, the teller indicated that she had computer problems and the defendant left without any money. Id.

---

[1] A copy of the judgment appealed from is contained in the Appendix to this brief at A97. All number references preceded by "A" refer to pages in the appendix, and number references preceded by "CA' refer to pages in the confidential appendix. All number references preceded by "PSR" refer to paragraphs in the Pre Sentence Report filed separately under seal.

2

On September 20, 2019, Tyo was named in a criminal complaint filed in the United States Court for the Western District of New York, and an arrest warrant was issued. PSR ¶2. On October 8, 2019, the defendant was arrested and made an initial appearance via a *Writ of Habeas Corpus ad Prosequendum* before United States Magistrate Judge Jonathan W. Feldman. PSR ¶3.

**Plea Hearing, Presentence Report and Sentencing**

On July 29, 2020, the defendant appeared in United States District Court for the Western District of New York, at Rochester, NY, before the Honorable David G. Larimer, United States District Magistrate Judge, via the Zoom platform. On that date, Mr. Tyo waived indictment and pled guilty to a three count information pursuant to a written plea agreement. PSR ¶4. Information 20-CR-6032 charges two counts of Bank Robbery (COUNTS ONE and TWO) and One Count of Attempted Robbery, all pursuant to 18 USC 2113(a). PSR¶4, [A23].

Tyo pleaded guilty pursuant to a plea agreement. That agreement provided a guideline stipulation. This plea agreement, pursuant to Rule ll(c)(l)(B) of the Federal Rules of Criminal Procedure stipulated that Guidelines§ 2B3.l(a) applies to the offenses of conviction and provided for a base offense level of 20 for each count. [A13].

In addition, the agreement provided that (a) the two-level increase pursuant to Guidelines § 2B3.1(b)(1) (property of a financial institution was taken); and (b)

3

the two-level increase pursuant to Guidelines § 2B3.1 (b)(2)(F) (threat of death) would apply to counts 1 and 2. [A14].

Further, the agreement provided that the two-level increase pursuant to Guidelines § 2B3.l(b)(l) (property of a financial institution was taken) would apply to count 3. Based on the above, and Guidelines § 3D1.4, the agreement provided that the defendant's combined adjusted offense level is 27. [A14].

The government consented to that application of the two (2) level decrease of Guidelines §3E 1.1 (a) (acceptance of responsibility as well as the additional one (1) level decrease of Guidelines§ 3El.l(b), which would result in a total offense level of 24. [A14].

The plea agreement recognized that Mr. Tyo was a criminal history category V resulting in a range of 92 to 115 months of imprisonment, a fine of $20,000 to $200,000, and a period of supervised release of 1 to 3 years. The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2. [A14-15].

The defendant's plea proceeding complied in every respect with Rule 11 of the Federal Rules of Criminal Procedure.

**The Presentence Report**

The probation department calculated the defendant's guidelines in a substantially similar manner, but nonetheless arrives at the same resulting offense

4

level. PSR¶73.

However, probation scored the defendant at a Criminal History Category VI.[2] Accordingly, probation noted that based upon a total offense level of 24 and a criminal history category of VI, the guideline imprisonment range is 100 to 125 months. PSR¶ 94, 95[3].

**The Sentencing**

On July 7, 2022, the defendant appeared before Hon. David G. Larimer, U.S.D.J., with Counsel for sentencing. [A63]. Initially, the Court discussed a prior motion by the defendant wherein he moved to withdraw his guilty plea [A48]. In addition, the defendant indicated that he had attempted to hire new counsel in order for that attorney to file a new motion to withdraw his plea. The court denied the defendant's request indicating that "we are proceeding to sentence," and that "it appears to me you've been interested in adjourning this sentence several times," and that the defendant "appeared a month ago." [A70]. First, the court addressed the PSR. [A75]. The Court noted the differences between probations calculation and the calculation in the plea agreement and held "The plea agreement, as I said, was a little lower range, was 92 to 115 months. So I find, after careful review and

---

[2] While probation arrives at the same offense level as the plea agreement, the plea agreement does not detail its findings as to criminal history category calculation, nor does it detail all aspects of its guideline level calculation.

[3] There appears to be a typographical error at PSR ¶94.

5

after listening to counsel, there are no objections to the Guideline calculations and since basically they're the same Guidelines that the parties agreed to two years ago when the plea was entered and the facts certainly support the Guidelines and the adjustments." [A76].

Next, the Court heard from defense counsel, who indicated that he believed that there were "some deep-seated mental health issues that Michael is struggling with" and that "over a year and a half ago, that he wasn't receiving, due to COVID, appropriate mental health treatment. We're now a year plus removed from that. That situation has not changed." [A77]. Counsel further noted that Michael was "still grieving and struggling from the death of his brother. He's from a broken home, with mental health issues with both his mom and abandonment issues with his dad and substance abuse issues with both, his own substance abuse, self-medication, suicidal ideologies." [A77]. The defendant briefly addressed the court. [A81]

As the government addressed the Court, the defendant became disruptive and was warned by the Court, and eventually removed from the courtroom. [A83-A84]. The government cited the defendant's behavior and unruliness as a factor to be considered in the court's sentence noting "that when things don't go his way, he will elevate the situation," and that "being out of custody hasn't gotten him any of that treatment. He went to robbing banks and these extremely violent

6

threatening letters." [A87].

In response to the government's comments, defense counsel noted that "I would just suggest that he's not getting the treatment he needs. I don't know if he's inappropriately or under or not medicated at all but he strikes me as an individual that is certainly not at his best mentally today." [A88]. In response, the court noted that "[Tyo's behavior is] not what the Court would expect here," and "this is consistent, somewhat, with Mr. Tyo's behavior throughout the case." The Court recognized that "early on, you know, he was respectful. There were no problems when the plea was taken." [A88].

The Court announced Tyo's sentence noting that "bank robberies, threatening tellers is about as serious as you can get," and that "[t]here's a 20-year max for each count," which "in itself…warrants a significant punishment." [A89]. The Court also noted the death of a Tyo's sibling 11 months before this bank robbery spree as "tragic," and that Tyo was a criminal history category VI. *Id.* Notably, the Court recognized that Tyo has heavy drug abuse history, including cocaine, marijuana, and opiates and that Tyo has been diagnosed with anxiety, depression and bipolar disorder. [A89-90].

The Court expounded that Mr. Tyo was unwilling (or unable) to complete mental health or drug programs, therefore the idea of future treatment was not ideal for Mr. Tyo. *Id.* In addition, the Court recognized that "unfortunately, [Tyo]

7

doesn't just have some mental health issues. He has drug issues and he has real propensity to use violence when it suits his interest. I think these bank robberies are symbolic in that." [A91].

The Court held that part of the sentence must be for deterrence stating, "[p]eople, because they are upset, need money, they just can't go down to the local bank and threaten tellers and rob the banks." [A90].

For those reasons, the Court sentenced Mr. Tyo to 100 months in prison to be followed by three years supervised release. [A92]. The court also imposed six special conditions including drug testing and mental health treatment as well as an order of restitution in the amounts of $800 and $1600 to Citizens Bank in Rochester and Buffalo, respectively, as well as a $300 special assessment. [A93-94, 98].

## ARGUMENT

### THE SENTENCE IMPOSED ON THE DEFENDANT BY THE DISTRICT COURT IS UNREASONABLE

We ask that this Court review the defendant's sentence and find that the District Court abused its discretion in failing to consider the defendant's serious mental health diagnosis, and that the defendant's sentence is procedurally and substantively unreasonable under the circumstances presented, and based on the

8

findings and reasons announced by the District Court. The defendant presented several factors to the District Court for consideration that the Court failed to adequately consider and apply sufficient weight.

**The Applicable Law**

Sentences imposed under federal criminal law are reviewed for "reasonableness," a concept that encompasses both the procedures used in arriving at the sentence and the length of the sentence itself. See United States v. Booker, 543 U.S. 220, 261–64 (2005); United States v. Cavera, 550 F.3d 180, 187-188, 189 (2d Cir. 2008) (en banc); United States v. Fernandez, 443 F.3d 19, 26 (2d Cir. 2006). "A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." United States v. Jesurum, 819 F.3d 667, 670 (2d Cir. 2016) (emphasis in original); see also United States v. Stewart, 590 F.3d 93, 134-135 (2d Cir. 2009).

In this context, the district court's factual findings are reviewed for clear error and the court's interpretation of the guidelines is reviewed de novo. United States v. Loudon, 385 F.3d 795, 797 (2d Cir. 2004).

The length of a sentence can also be reviewed for substantive

9

reasonableness, which is essentially review for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007). But while reasonableness review implies some level of deference to the district court, it does "not equate to a 'rubber stamp.'" United States v. Rattoballi, 452 F.3d 127, 132 (2d Cir. 2006) ("reasonableness ... is a concept that implies boundaries. . . ."), abrogated in part on other grounds by Kimbrough v. United States, 552 U.S. 85 (2007). Thus, the substantive reasonableness of any sentence must be assessed in accordance with the governing sentencing statute and its directive to sentencing courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a).

Substantive review of sentences "is intended to 'provide a backstop' against sentences that are 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law.'" United States v. Dorvee, 616 F.3d 174, 183 (2d Cir. 2010) (quoting United States v. Rigas, 583 F.3d 108, 123 (2d Cir. 2009)). The factors set forth in 18 U.S.C. § 3553(a) govern the Second Circuit's review for substantive unreasonableness. See United States v. Jenkins, 854 F.3d 181, 187 (2d Cir. 2017). This Court must evaluate whether "each sentencing factor, 'as explained by the district court, can bear the weight assigned it under the totality of the circumstances in the case.'" Id. at 188 (quoting United States v. Cavera, 550 F.3d 180, 191 (2d Cir. 2008) (en banc)).

Appellate courts do not presume that sentences within the applicable guideline range are reasonable when they review them substantively. See United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) (declining to establish "any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable"). As the Supreme Court made clear in Gall, the amount by which a sentence deviates from the applicable Guidelines range is not the measure of how "reasonable" a sentence is. Reasonableness is determined instead by the district court's individualized application of the statutory sentencing factors. See Gall vs United States, 552 U.S. 38, 46-47(2007); United States v. Dorvee, 616 F.3d 174, 184 (2d Cir. 2010).

**The Defendant's Sentence Was Unreasonable**

**The Court Failed to Consider other Factors Under 18 USC 3553(a)**

The District Court abused its discretion in determining Tyo's sentence. The Court placed undue weight on factors like deterrence and the nature of the offense and failed to adequately consider the defendant's severe mental health diagnosis and drug addiction.

**The defendant's mental illness and drug addiction**

The defendant raised his mental illness with the court and the court recognized the defendant's diagnosis of bipolar disorder. The defendant

submitted a mitigation report with his sentencing memorandum.[4] [CA1]. The report details Michael's condition as well as how his prior periods of incarceration have exacerbated that condition. [CA 10-13]. Amy Knibbs explains that "Bipolar Disorder often goes undiagnosed for longer than other psychiatric conditions and is misdiagnosed at very high rates," and that this was the case here. [CA5].

The National Institute of Mental Health defines Bipolar Disorder as "a brain disorder that causes unusual shifts in mood, energy, activity levels, and the ability to carry out day-to-day tasks." [CA5]. Knibbs explains that "[p]eople with Bipolar Disorder can swing between mania (characterized by increased energy, euphoria, restlessness, or impulsivity) and crippling depression (including long periods of sadness, loss of energy, or changes to sleep and eating habits), or experience mixed states." [CA5].

She explains that "hypomania, a less severe form of mania, may persist for years, leaving a person highly functional, if untreated it can develop into more severe forms of mania or depression, like the hypermanic state." [CA5].

A manic episode is defined by the DSM-V with the following symptoms:

> i) Inflated self-esteem or grandiosity.
> ii) Decreased need for sleep (e:g., feels rested after only 3 hours of sleep).

---

[4] Mitigation Report of Amy Knibbs, dated July 25, 2020 filed in confidential appendix.

12

> iii) More talkative than usual or pressure to keep talking.
> iv) Flight of ideas or subjective experience that thoughts are racing.
> v) Distractibility (i.e. attention too easily drawn to unimportant or irrelevant external stimuli), as reported or observed.
> vi) Increase in goal-directed activity (either socially, at work or school, or sexually) or psychomotor agitation (i.e,, purposeless non-goal-directed activity).
> vii) Excessive involvement in activities that have a high · potential for painful consequences (e.g., engaging in unrestrained buying sprees, sexual indiscretions, or foolish business investments).

[CA6].

Indicators of mania including grandiosity, agitation, inability to sit still, lack of focus, insomnia, impulsivity, risk taking including drug use, and even mild aggression have all been observed in Michael's psychiatric records over the years. These symptoms recurred even as his diagnosis fluctuated and his drug use continued. [CA6].

Knibbs explains that "it is common for people to take time to accept and gain insight into such a serious diagnosis as Bipolar Disorder, in Michael's case, he was given conflicting diagnoses over the following years." [CA6].

With all of this information available to the Court, and with the Court even recognizing and accepting the diagnosis of bipolar disorder, the Court nonetheless disregarded even the most common aspects of the disorder stating

> And he has heavy drug abuse history, cocaine, marijuana, opiates. He has been afforded numerous treatment programs and he's failed out or booked out of all of them. And, frankly, the same thing has happened

13

> with mental health treatment. He's been diagnosed with depression, anxiety, bipolar disorder. But as I review the presentence report, he's never completed a mental health treatment program because he doesn't like group settings. He wants to have a private consultation.

[A89-90]. Further, the Court said about a sentence involving treatment, "it's not going to work. I mean, he just doesn't seem to have the ability to make good judgments and accept the help that's been offered to him." [A90].

Simply put, the bad behavior that the court took offense to is part and parcel of bipolar disorder. The inability to be self-reflective, and for Tyo to look for, and complete, any serious mental health or drug program is all rooted in years of "missed" and misdiagnoses. Even the manner in which this crime was committed – three robbery attempts in three days - screams of a manic episode.

Moreover, his behavior in the courtroom and interactions with the court likewise demonstrate the depth and seriousness of his condition.

None of this was offered to excuse Mr. Tyo's behavior but only offered in mitigation and to demonstrate that prolonged incarceration had, and will exacerbate his condition because the BOP is not equipped to treat Mr. Tyo. [CA 12-14].

It was for those reasons that the defendant requested a sentence below the guidelines range noting that when Michael had appropriate treatment and been his old self, "he's a good guy," but now [h]e's troubled… he's struggling… [a]nd it

14

would be my hopes that the Court would consider strongly a non-Guideline sentence so that he can get treatment that he needs because, otherwise, I think, he's going to be a lost cause. Prison is not going to help him." [A78].

**The Defendant's Sentence is Substantively Unreasonable**

For all of the reasons enumerated above, the factors relied upon by the district court can bear the weight assigned it under the totality of the circumstances in the case. As such, the Court must vacate Michael Tyo's sentence and resentence him.

## CONCLUSION

For all of the reasons set forth above, Tyo's sentence should be vacated and the case remanded for resentencing.

                                        Respectfully submitted,

                                        s/Nicholas J. Pinto
                                            Nicholas J. Pinto
                                            745 Fifth Ave, Suite 500
                                            New York, New York 10151
                                            (212) 619-5500
                                            Attorney for Appellant
                                            Michael Tyo

April 18, 2023